FREDERICK M. BOSS
Deputy Attorney General
ANDREW HALLMAN  #083480
SAMUEL A. KUBERNICK  #045562
Assistant Attorneys General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4794
Email:  Andrew.Hallman@doj.state.or.us
          Samuel.A.Kubernick@doj.state.or.us

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LISA MARIE ROBERTS,<br><br>       Petitioner,<br><br>    v.<br><br>NANCY HOWTON,<br><br>       Respondent. | Case No. 3:08-cv-01433-MA<br><br>NOTICE OF STATE'S DECISION NOT TO RETRY PETITIONER |

In follow up to this Court's April 9, 2014 Judgment (Docket No. 234), ordering that

petitioner "shall be released from custody unless the State of Oregon elects to retry her within 90

days" of April 9, 2014, Respondent informs the Court that the State of Oregon is not going to

retry petitioner.  Along with this notice, Respondent attaches a letter signed by Multnomah

County District Attorney Rod Underhill and Portland Police Chief Michael C. Reese so

indicating (Attachment A), along with a letter from the Department of Justice's Criminal Justice

Page 1 -   NOTICE OF STATE'S DECISION NOT TO RETRY PETITIONER
AH/5341529-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

Division to Mr. Underhill (Attachment B).  Undersigned counsel understands that petitioner will

be released from custody today.

    DATED May ___28___, 2014.

                                    Respectfully submitted,

                                    FREDERICK M. BOSS
                                    Deputy Attorney General


                                    ____s/ Samuel A. Kubernick_____
                                    ANDREW HALLMAN #083480
                                    SAMUEL A. KUBERNICK #045562
                                    Assistant Attorneys General
                                    Trial Attorneys
                                    Tel (503) 947-4700
                                    Fax (503) 947-4794
                                    Andrew.Hallman@doj.state.or.us
                                    Samuel.A.Kubernick@doj.state.or.us
                                    Of Attorneys for Respondent

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794



**ROD UNDERHILL**, District Attorney for Multnomah County

1021 SW Fourth Avenue • Room 600 • Portland, OR 97204-1193
Phone: 503 988-3162 • Fax: 503 988-3643 • www.mcda.us

May 28, 2014

Honorable Malcom F. Marsh
U.S. District Court
1000 S.W. Third Ave. Suite 1507
Portland, Oregon 97204

United States District Judge Malcolm Marsh:

We have carefully reviewed your April 9, 2014, 81 page Opinion and Order regarding <u>Lisa Marie Roberts v. Nancy Howton</u>. The court's conclusion provides that "Petitioner's Fourth Amended Petition (3173) is GRANTED on the basis that petitioner received ineffective assistance of counsel, and DENIED as to the remaining claims." Further, you order that "Petitioner shall be released from custody unless the State of Oregon elects to retry her within 90 days of the date of this Opinion and Order."

Similar to the court and counsel for Lisa Roberts, the Multnomah County District Attorney's Office, Portland Police Bureau and Oregon Department of Justice (both Criminal Justice Division and Appellate) have committed significant, and appropriate, attention and resources into evaluating this issue. The decision has been made to not appeal this court's Order leaving the election to "retry" (understanding that Ms. Roberts pled guilty and did not elect a trial we know that term "retry" is being used to put her back into a position that preceded her guilty plea) Ms. Roberts or allow the court to release her as the remaining options.

Critical to the evaluation is the analysis of the question of who is responsible for the death of Jerri Williams. As this court is aware, we asked the Oregon Department of Justice, Criminal Justice Division to conduct an independent review of this matter. They have concluded "…there has not been one claim or combination of claims that have led the Oregon Department of Justice to reasonably conclude that anyone but the Petitioner [Lisa Roberts] murdered Jerri Williams on May 25, 2002." (See attached letter). The Multnomah County District Attorney's Office and the Portland Police Bureau have also evaluated all of the information that has been gathered to date and have reached the same conclusion, that Lisa Marie Roberts is responsible for the death of Jerri Williams. While this assessment might result in a conclusion that the case should be returned to Multnomah County to "retry" her we looked at other factors.

1

We have been in contact with many of Jerri Williams' surviving family members in order to seek and obtain their opinions. Following Lisa Roberts' plea of guilty to Manslaughter in the First Degree on December 1, 2002, Judge Ronald Cinniger imposed a 15 year (negotiated and agreed upon) sentence by the parties. We have carefully balanced the fact that Lisa Roberts has served nearly all of the 15 year sentence (she has a current projected release date of September 3, 2016), listened closely to Jerri Williams' family's input including, among other things, the current status of the evidence and we also factored in a responsible resource allocation analysis.

Consequently, after careful consideration we are not electing to retry Lisa Roberts. We understand that this decision will result in Lisa Roberts' release from custody earlier than the parties negotiated sentence reflected in Judge Cinniger's sentencing order.

Dated: 5/28/2014

Rod Underhill
Multnomah County District Attorney

Michael C. Reese
Chief of Police, Portland Police Bureau

Attachment

2

ELLEN F. ROSENBLUM
Attorney General

FREDERICK M. BOSS
Deputy Attorney General

# DEPARTMENT OF JUSTICE
## CRIMINAL JUSTICE DIVISION

April 15, 2014

Rod Underhill
District Attorney
Multnomah County District Attorney's Office
Portland, OR

Re: *State v. Lisa Roberts*

Dear Mr. Underhill,

You asked us to review the investigation and prosecution of Lisa Roberts. We are writing to offer our analysis and conclusions in that matter.

<u>Case History</u>

Jerri Williams was murdered and her body found in Multnomah County, Oregon on May 25, 2002. Lisa Marie Roberts was arrested for her murder on August 16, 2002. Ms. Roberts pleaded guilty to Manslaughter in the First Degree on December 1, 2004. At the time, you were a Senior Deputy District Attorney at the Multnomah County District Attorney's Office and prosecuted the case.

After her conviction, Ms. Roberts filed all available state court appeals. Her case went through direct appeal in 2004-2007(judgment affirmed, A125584); PCR occurred in 2006-2008 (relief denied, C06-4204CV); and PCR Appeal occurred in 2008 (summary affirmance, A136500).

In 2008, Petitioner (Ms. Roberts) filed a Petition for Writ of Habeas Corpus in federal court. It wasn't until late 2012, however, when her case gained any traction: Petitioner alleged in a court filing that the state violated its *Brady* obligations in the original pre-trial phase by not discovering to defense counsel lab notes from the Oregon State Crime Lab. The state fervently denied Petitioner's claims. Nonetheless, based on Petitioner's contentions, the federal court ordered additional DNA testing. After the follow-up DNA testing had commenced, Petitioner acknowledged her allegation of a *Brady* violation was false and claimed she had simply been mistaken in making her assertions to the court. In April 2013, follow-up DNA testing revealed that a previously unidentified DNA profile found on Jerri Williams' body matched the DNA of Brian Tuckenberry, an individual who is incarcerated at Deer Ridge Correctional Institute.[1]

---

[1] Standard DNA testing was conducted. However, Mr. Tuckenberry's profile existed in a law enforcement database due to a 2010 conviction in Multnomah County. It was the comparison of the DNA profile found on Ms. Williams with the sample in the database that identified Mr. Tuckenberry as a match.

April 15, 2014
Page 2

In May of 2013 additional DNA testing was completed using a form of DNA testing (Y-STR typing) that had only become available to the Oregon State Crime Lab in early 2013. The Y-STR testing reported on by the Crime Lab in May 2013 revealed that DNA profiles consistent with Brian Tuckenberry and another man, Ed Mills, were located on vaginal swabs collected during the autopsy of Jerri Williams.[2]

<u>DOJ Criminal Justice Division Involvement</u>

In early May 2013, you, in your position as Multnomah County's elected District Attorney, received a letter from Assistant Public Defender Alison Clark requesting, among other things, that you recuse yourself and your office from undertaking the "new investigation" surrounding the death of Jeri Williams to avoid the "appearance of a conflict of interest or bias." The request from Ms. Clark was rather specific in that a new special prosecutor should be appointed with investigative assistance from the Oregon State Police.[3] After several internal meetings with some of your personnel and detectives from the Portland Police Bureau, you also met with Steve Wax, Ms. Clark and representatives from DOJ's Trial Division (currently representing the state in the federal habeas matter). Mr. Wax and Ms. Clark reiterated their requests consistent with the letter you received. You outlined for Mr. Wax and Ms. Clark some of the potential drawbacks in having new counsel and investigators assigned, including the probable delays to allow for review by fresh eyes of 11 years' worth of material.

On June 3, 2013, you spoke with Oregon Department of Justice Criminal Justice Division Chief Counsel, Darin Tweedt. At the conclusion of the conversation, Mr. Tweedt agreed that CJD would assume the case review and investigation of the Jerri Williams matter. The task was to review Jerri Williams' murder in light of the newly-discovered DNA evidence and determine if there was an alternate suspect or suspects.[4]

---

[2] DNA from more than one person had been detected on the victim's vaginal swabs when they were originally tested in 2002. However, available testing at that time did not allow for more precise identification. Also, as you know, Ms. Williams worked as a prostitute for men; finding male DNA on the victim's vaginal swabs was and is not surprising.

[3] Conviction Integrity Units are becoming more frequent in larger jurisdictions around the country; Dallas (TX), Manhattan and Brooklyn (NY), and Cook County (IL) are some jurisdictions which have these units. CIUs are typically part of the District Attorneys' offices and the work is done by members of that same office. Case review protocol varies by jurisdiction. No Oregon jurisdiction has a CIU.

[4] On April 9, 2014, Judge Malcolm Marsh issued his Opinion in Petitioner's federal habeas case. Judge Marsh granted relief on Petitioner's claim of trial counsel's (Bill Brennan) ineffective assistance of counsel related to the cell phone information. We have reviewed Judge Marsh's Opinion. His conclusions regarding the claim for which he has granted relief do not alter the task assigned to us nor our ultimate analysis of the issues pertinent to that task. Judge Marsh's observations about other evidence in this case is significant and we have given them due consideration.

April 15, 2014
Page 3

On June 13, 2013, you met with Department of Justice Senior Assistant Attorneys General Erin Greenawald and Scott Jackson, and Special Agent Micah Persons to discuss the case and to work on an organized transfer of material. The Special Prosecution Appointment paperwork was signed on June 20th. However, on June 19th, even before we were officially appointed, Mr. Wax and Ms. Clark requested that Mr. Jackson and I participate in a telephone conference wherein they voiced their aspiration to work 'collaboratively'.[5]

For the past ten months, we have endeavored to complete the assigned task with the highest appreciation of its significance for all involved, including the Petitioner.

Our team has (this is a non-exhaustive list):

- Reviewed thousands of pages of original discovery, as well as new information regarding Brian Tuckenberry
- Listened to dozens of audio taped interviews
- Reviewed videotaped material
- Reviewed material contained on floppy disks
- Interviewed multiple witnesses and performed on-going field work, including an hours-long evidence view
- Performed analysis of cell phone records
- Identified issues and areas of interest and completed investigation and analysis
- Consulted with the Oregon State Medical Examiner's Office
- Consulted with cell phone/system and other subject-matter experts
- Participated in multiple meetings with crime lab personnel
- Participated in a meeting with Petitioner's team and crime lab personnel
- Reviewed state and federal habeas documents and pleadings
- Met monthly, if not semimonthly (or even more frequently, at times) and kept in contact by email and phone about the status of our respective assignments.
- Assisted DOJ's trial division with the constant discovery and other evolving demands made by Petitioner's Team

As indicated by the last bullet point, Petitioner's claims and areas of interest have evolved. One of Petitioner's initial claims was that the state had violated her rights by not providing exculpatory evidence pursuant to the state's *Brady* obligations. As noted above, that was untrue. However, that claim resulted in follow-up DNA testing which revealed a match with Brian Tuckenberry, and later, with Ed Mills. Petitioner's current claims are colorful and diverse. Our team has reviewed and discussed each one.

Some of Petitioner's claims have merited follow-up investigation or analysis (estimated time of death, physical marks on the victim's body, DNA significance and analysis, compiling a profile

---

[5] Per our understanding of the federal pubic defenders' requests to you, our review and investigation was supposed to be independent. Therefore, we have not accepted their offer to participate in joint interviews or investigative techniques. We have attempted to engage in information exchange, but have been unsuccessful.

April 15, 2014
Page 4

of Mr. Tuckenberry and investigating his associates' statements). Some of Petitioner's claims are simply in dispute and no follow-up is necessary (analysis and interpretation of cell phone records; Kelley Point Park witness statements offered by Petitioner). Some of Petitioner's other issues are conclusory and near- impossible to follow-up on (the importance Petitioner places on a mysterious "blue van" or a "multi-colored" car, for example).

The facts and circumstances which lead to Petitioner's initial arrest, indictment by a Multnomah County Grand Jury, and ultimate conviction (by plea) still exist (again, not an exhaustive list):

- Petitioner made statements to friends about her willingness to kill the victim
- Petitioner made statements about having shot and possibly killed a person in Texas
- Petitioner has a history of strangling her intimate partners, including the victim
- Petitioner demonstrated a willingness to be violent toward others, including soliciting help to kidnap a woman involved with Petitioner's ex/estranged (romantic) partner
- Petitioner had assaulted the victim in the past
- Petitioner demonstrated a clear hostile intent by word and action toward the victim
- Petitioner had a clear motive for killing the victim
- Petitioner made inconsistent statements to investigators
- Petitioner made detailed inculpatory statements to another inmate during the pendency of the case
- Petitioner's cell phone records are significant in determining her location and repudiating her statements to police
- Petitioner solicited the murder of a prosecution witness during the pendency of the case
- Petitioner pleaded guilty to manslaughter

The Petitioner has not credibly refuted any of the above-listed facts.[6]  There are always unanswered questions in any criminal investigation and this case is no different.  In the end, however, there has not been one claim or combination of claims that have led the Oregon Department of Justice to reasonably conclude that anyone but the Petitioner murdered Jerri Williams on May 25, 2002. In other words, we do not find that there is clear and convincing evidence for a plausible claim of Petitioner's innocence.

 Thank you for the opportunity to assist your office in this matter.


/s/ ESG                                             /s/ OSJ
Erin S. Greenawald, #99542                          O. Scott Jackson, #840552
Sr. AAG, Oregon DOJ                                 Sr. AAG, Oregon DOJ

---

[6] Petitioner asserts that Petitioner's cell phone records do not put her close to Kelley Point Park where the victim's body was discovered. However, Petitioner does acknowledge that there is a definite utility to Petitioner's cell phone records in that they demonstrate her general path of travel, i.e., location.

April 15, 2014
Page 5